IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division



SOUTHEASTERN WHOLESALE CORP.,

          **Plaintiff,**

v.                                                    Civil Action No. 2:12cv701

COX COMMUNICATIONS HAMPTON ROADS, LLC, *ET AL*

          **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Defendants Cox Communications of Hampton Roads, LLC and Cox Virginia Telecom, LLC's (collectively, "Defendants" or "Cox") Motion to Dismiss five of Plaintiff Southeastern Wholesale Corporation's ("Plaintiff" or "Southeastern") claims for failure to state a claim. Doc. 9. For the reasons stated herein, the Court **DISMISSES** Count Four of the Complaint **WITH PREJUDICE**, **DISMISSES** Counts Three and Five of the Complaint **WITHOUT PREJUDICE**, and **DENIES** the Motion as to Counts One and Two of the Complaint.

# I. BACKGROUND

## A. Factual Allegations[1]

Plaintiff is a Virginia Beach-based used car dealer that markets directly to military service people stationed in the Hampton Roads area. Doc. 10 at 2; see also Compl. ¶ 2. For an unspecified number of years leading up to the incidents in dispute, Plaintiff used a toll-free number (1-800-394-3939) provided by Verizon, as part of its marketing strategy. Compl. ¶ 3. Defendants provide telecommunication services, including internet and telephone services, to its paying customers. Id.

In August 2011, the parties entered a contractual agreement, whereby Defendants agreed to provide Plaintiff with all the telecommunications services previously provided by Verizon. Doc. 10 at 2; Compl. ¶ 8. Plaintiff alleges that pursuant to this agreement, Defendants were instructed to (1) install new lines of service to Plaintiff's primary business location, a task that would take several months; (2) after installing new lines, transfer Plaintiff's internet services from Verizon to Cox; and (3) transfer Plaintiff's telephone services, including the above referenced toll-free telephone number, from Verizon to Cox, such that there would be no interruption in service. Doc. 10 at 2.

Plaintiff alleges that a material provision of the parties' agreement required Defendants to refrain from transferring the toll-free telephone number from Verizon to Cox until: (1) the internet services had been transferred from Verizon to Cox; and (2) Defendants contacted Joseph Brown (the owner and director of the corporate Plaintiff) by cell phone and obtained permission to transfer Plaintiff's telephone services. Compl. ¶ 9. Plaintiff avers that Defendants ignored

---

[1] "In considering a motion to dismiss, [the Court] accept[s] as true all well-pleaded allegations and view[s] the complaint in the light most favorable to the plaintiff." Venkatraman v. REI Sys., Inc., 417 F.3d 418, 420 (4th Cir. 2005) (citing Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993)). The Court cautions, however, that the facts alleged by Plaintiff are recited here for the limited purpose of deciding the instant Motion to Dismiss. The recited facts are not factual findings upon which the parties may rely for any other issue in this proceeding.

this express provision of the agreement, and using a computer system, Defendants "immediately and wrongly seized [the toll-free telephone] number in September 2011." Compl. ¶ 10. At that point, Plaintiff alleges, any person calling the toll-free number was informed it was no longer in service. Compl. ¶ 11.

Plaintiff learned that the toll-free number was no longer in service in August 2012, when a repeat customer contacted Brown and informed him that the toll-free number was no longer in service. Compl. ¶ 12. According to Plaintiff, Brown made immediate arrangements to re-activate the toll-free number, but not before Plaintiff's advertising investments were "effectively devalued by the suspension of services[.]" Compl. ¶ 13.

## B. Procedural History

Plaintiff filed its Complaint in Virginia Beach Circuit Court on November 15, 2012. Doc. 1, Ex. 1 at 5 (hereinafter, "Compl."). There, Plaintiff asserts claims for Conversion (Count One), Trespass on Chattels (Count Two), Civil Violation of the Virginia Computer Crimes Act ("VCCA") (Count Three), Constructive Fraud (Count Four), Negligence (Count Five), and Breach of Contract (Count Six). Compl. ¶¶ 14-33. Plaintiff seeks $1,100,000.000 in compensatory damages. Compl. ¶ 33.

On December 7, 2012, Defendants filed an Answer and a Demurrer in Virginia Circuit Court. Doc. 1, Ex. 2; Doc. 3. Pursuant to 28 U.S.C. §§ 1441, 1332, Defendants removed the case to federal court on December 19, 2012. Doc. 1. On January 15, 2013, Defendants filed the instant Motion and a supporting brief. Docs. 9, 10. Plaintiff's Opposition was filed on January 29, 2013. Doc. 12. Defendants filed their Reply on February 4, 2013. Doc. 13.

## II. LEGAL STANDARDS

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a claim. See Randall v. United States, 30 F.3d 518, 522 (4th Cir. 1994) (citation omitted). In considering such a motion, a court should accept as true all well-pleaded allegations and view the claim in the light most favorable to the claimant. See De Sole v. United States, 947 F.2d 1169, 1171 (4th Cir. 1991) (citing Jenkins v. McKeithen, 395 U.S. 411, 421 (1969)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (abrogated by Harlow v. Fitzgerald, 457 U.S. 800 (1982)).

A court must also be mindful of the liberal pleading standards under Rule 8, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. While Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions" because "a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007) (citation omitted). Indeed, the legal framework of a claim must be supported by factual allegations that "raise a right to relief above the speculative level." Id. at 1965. In Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), the Supreme Court expanded upon Twombly by articulating the two-pronged analytical approach to be followed in any Rule 12(b)(6) test.

First, a court must identify and reject legal conclusions unsupported by factual allegations because they are not entitled to the presumption of truth. Id. at 1951. "[B]are assertions" that amount to nothing more than a "formulaic recitation of the elements" do not suffice. Id. (citations omitted). Second, assuming the veracity of "well-pleaded factual allegations," a court must conduct a "context-specific" analysis drawing on "its judicial experience and common

sense" and determine whether the factual allegations "plausibly suggest an entitlement to relief." Id. at 1950-51. The plausibility standard demands more than a showing of "a sheer possibility that a defendant has acted unlawfully." Id. at 1949. That is, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949. "In other words, the complaint's factual allegations must produce an inference of liability strong enough to nudge the plaintiff's claims 'across the line from conceivable to plausible.'" Nemet Chevrolet, Ltd. V. Consumeraffairs.com, Inc., 591 F.3d 250, 256 (4th Cir. 2009) (internal citations omitted).

Additionally, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "[T]he 'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (internal citations omitted). However, "Rule 9(b) allows conclusory allegations of defendant's knowledge as to the true facts and of defendant's intent to deceive." Harrison, 176 F.3d at 786; see also Fed. R. Civ. P. 9(b). In fraud cases, "lack of compliance with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6)." Harrison, 176 F.3d at 783 n.5 (internal citations omitted).

### III. ANALYSIS

**A. Virginia Law Applies**

"A federal court hearing a diversity claim must apply the choice-of-law rules of the state in which it sits." Res. Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 635 (4th Cir. 2005); see also Klaxon Co. v. Stenor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941). The

instant Action was removed to this Court pursuant to 28 U.S.C. §§ 1441, 1332; thus, Virginia's choice-of-law rules apply.

Under Virginia law, "[i]n transitory actions, matters of substantive law are governed by the law of the place of the transaction, and matters of remedy and procedure are governed by the law of the place where the action is brought." Willard v. Aetna Cas. & Sur. Co., 213 Va. 481, 483 (1973). Moreover, the court of the forum state determines whether a legal question is substantive or procedural. Id. Here, the question before the Court is whether, as a matter of law, Plaintiff has properly alleged various tort claims, a clearly substantive question.

Courts in this District have recognized that pursuant to Virginia law, tort claims are governed by "the place of the wrong," defined as "the place where the last event necessary to make an [individual] liable for an alleged tort takes place[.]" Cars Unlimited II, Inc. v. Nat'l Motor Co., Inc., 472 F. Supp. 2d 740, 749 (E.D. Va. 2007) (quoting Insteel Indus., Inc. v. Costanza Contracting Co., 276 F.Supp.2d 479, 486 (E.D.Va.2003)).

Here, the alleged injury took place in Virginia Beach, Virginia. Accordingly, the substantive law of Virginia applies to Plaintiff's tort claims.

## B. Whether A Toll-Free Phone Number is Property that can be Owned or Possessed

Defendants argue that Plaintiff's property based claims (conversion, trespass, and computer theft) must be dismissed as a matter of law, because in Virginia, no individual or entity has the right to own or possess a telephone number. Doc. 10 at 4.

To assert a claim for conversion in Virginia, "a plaintiff must prove by a preponderance of the evidence (i) the ownership or right to possession of the property at the time of the conversion and (ii) the wrongful exercise of dominion or control by defendant over the plaintiff's **property**, thus depriving plaintiff of possession." Airlines Reporting Corp. v. Pishvaian, 155 F.

Supp. 2d 659, 663-64 (E.D. Va. 2001) (internal citations omitted) (emphasis added). Similarly, "[a] trespass to chattels occurs when one party intentionally uses or intermeddles with **personal property** in rightful possession of another without authorization. One who commits a trespass to chattel is liable to the possessor of the chattel if the chattel is impaired as to its "condition, quality, or value." Am. Online, Inc. v. LCGM, Inc., 46 F. Supp. 2d 444, 451-52 (E.D. Va. 1998) (quoting Am. Online, Inc. v. IMS, 24 F. Supp. 2d 548, 550 (E.D. Va. 1998)) (emphasis added). Finally, a claim of computer theft brought under the VCCA, requires a plaintiff to allege that the defendant used a computer or a computer network, without authority to convert the **property** of another. Va. Code § 18.2-152.3 (2005) (emphasis added).[2]

In Defendants' view, the Plaintiff has failed to state a claim upon which relief can be granted, because Plaintiff does not have a property interest in the toll-free telephone number, an essential element of the claims raised by Plaintiff in Counts One through Three of the Complaint. While Defendants admit that Virginia has not squarely ruled on the issue of whether an individual owns or has a property right to a telephone number, they allege that the Supreme Court of Virginia has provided guidance on the topic through its statements on an analogous issue ownership of an Internet domain name. Doc. 10 at 5, 6. In Network Solutions , the court concluded:

> whatever contractual rights the judgment debtor has in the domain names . . . those rights do not exist separate and apart from NSI's services that make the domain names operational Internet addresses. Therefore, we conclude that 'a domain name registration is the product of a contract for services between the registrar and registrant.'

---

[2] The code defines property as including: realty; computers and computer networks; financial instruments, computer data, software, and programs; and all other personal property whether tangible or intangible, in a format readable by humans or a computer, in transit between computers or within a network, located on any paper or in any device on which it is stored by a computer or a human, and computer services. Va. Code § 18.2-152.2 (2010).

7

Network Solutions, Inc. v. Umbro Int'l, Inc., 259 Va. 759, 770 (2000) (quoting Dorer v. Arel, 60 F.Supp.2d 558, 561 (E.D. Va. 1999)). The court further opines: "[w]e are cognizant of the similarities between a telephone number and an Internet domain name and consider both to be products of contracts for services. In our opinion, neither one exists separate from its respective service that created it and that maintains its continued viability." Network Solutions, 259 Va. at 772. Defendants argue that Plaintiff's toll-free telephone number, like the internet domain name in Network Solutions, exists solely by virtue of a service contract, and is so bound to that contract that Plaintiff cannot allege a separate, personal property right it. Doc. 10 at 6. Rather, Defendants contend that the fact that Plaintiff cannot use the number without paying a service provider suggests the true nature of Plaintiff's relationship to the toll-free telephone number – Plaintiff merely has a contractual right to use the number. Doc. 10 at 6.

In Network Solutions, the Supreme Court of Virginia addressed the issue of whether a contractual right to use an Internet domain name can be garnished. 259 Va. at 761. The appellee in this case, Umbro International, Inc. ("Umbro") had obtained a default judgment against a Canadian Corporation and its owner (collectively, the "Judgment Debtor"). Id. at 761-62. Apparently, the Judgment Debtor had registered the Internet domain name "Umbro.com" with the appellant, Network Solutions. Id. Umbro subsequently sought to enforce the judgment by instituting a garnishment proceeding in Virginia Circuit Court, seeking to garnish thirty-eight Internet domain names the Judgment Debtor had registered with Network Solutions. Id. Network Solutions resisted, arguing that it held no garnishable property interest as the Internet domain name registration agreement were contracts for services that are not subject to garnishment. Id. at 763. The Circuit Court disagreed with Network Solutions, and ordered the company to deposit the Internet domain names, after concluding that "Internet domain names are

a new form of intellectual property, separate and apart from domain name services provided by[companies such as Network Solutions], in which the judgment debtor has a possessory interest. Id. at 768. On appeal, Umbro argued that the contractual right to use a unique domain name for a specified period of time is intangible property in which a judgment debtor has a possessory interest that is subject to garnishment. Id. at 769. The Virginia Supreme Court disagreed, concluding that a "domain name registration is the product of a contract for services," and thus not a liability as used in the statute governing the institution of garnishment proceedings. Id. at 770. The court expressed concern that any other conclusion would make "practically any" service garnishable, a step the court was unwilling to take absent intervention by the Virginia legislature. Id. at 771. Moreover, the court rejected Umbro's attempt to distinguish the contractual right to use a domain name from the services (already paid for) that continue to make a domain name an operational Internet address.[3] In rejecting this distinction, the court explicitly acknowledged and rejected holdings that concluded that the property interest in a business telephone number could be distinguished from a subscriber's rights to use the telephone utility service. Id. at 772. Accordingly, the court concluded, while a contract right might have a garnishable property interest (for example, when money is due under a contract), this was not the case in a contract for services. Id.

Plaintiff argues that Defendants' reliance on Network Solutions is misplaced. Doc. 12 at 4. In Plaintiff's view, the procedural context of the case, a collections case where the court was presented with the question of whether a debtor's contractual rights in an internet domain name was a garnishable interest, is distinguishable from the question of whether a telephone number is a property interest that can be converted. Doc. 12 at 5. Rather, Plaintiff believes the issue of

---

[3] Network Solutions acknowledged that the contractual right to use an Internet domain name is a form of intangible personal property, effectively preventing this question from being considered by the court.

whether the toll-free telephone number is property is controlled by E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., where the court held that a claim of conversion is not limited to property merged into documentation. 3:09CV58, 2011 WL 4625760 (E.D. Va. Oct. 3, 2011) (unpublished).

E.I. du Pont is an unpublished decision by Judge Payne of the Eastern District of Virginia. In a Motion for Judgment as a Matter of Law, the defendant argued that plaintiff's claim should fail because trade secrets were neither intangible nor tangible property that could be converted, because the trade secrets did not arise from and were not merged with a document. Id. at *1. The court found defendant's argument meritless, as Virginia recognizes a property interest in confidential information. Id. at *3. Moreover, the court concluded, that conversion protected intangible property, even if such property was not merged into a document evidencing title or ownership. Id. at *4. Otherwise, the court found that the purpose of the tort of conversion would not keep up with technological developments sufficient to protect modern property rights:

> In this technology-driven world, the value of intangible property cannot be disputed, and a decision to limit conversion to tangible property or intangible property merged in a document symbolizing ownership would leave domain name users, satellite programmers, owners of telephone networks and internet servers, and others similarly situated unable to use an action for conversion for substantial interference with their rights. Id. at * 5.

Here, it is not clear whether an individual has an ownership interest in a telephone number in Virginia. Neither of the parties' cited authority is directly on point. Defendants' cited authority, is dicta from a case that is procedurally distinguishable and does not address the question of whether an individual has a property interest in a telephone number, while Plaintiff's cited authority relies on a case that stands for a much broader proposition than the issue before

the Court. Both parties point to the existence of a circuit split among those that have entertained the issue.[4] The Fifth and First Circuits have found that telephone numbers may constitute a unique property interest. See, e.g., Matter of Sec. Inv. Properties, Inc., 559 F.2d 1321, 1324, 1324 n.1 (5th Cir. 1977) (declining to rely on state tariff to conclude that a debtor can have no property interest in his telephone); Darman v. Metro. Alarm Corp., 528 F.2d 908, 911 (1st Cir. 1976) (holding that subject to the paramount ownership rights of the telephone company, a subscriber has superior rights to transfer a phone number than an third party).

The Second, Third, Seventh, and Ninth Circuits, however, have held that subscribers have no property or possessory interest in telephone numbers. See, e.g., Bus. Edge Grp., Inc. v. Champion Mortgage Co., Inc., 519 F.3d 150, 154 (3d Cir. 2008) (relying on the Code of Federal Register and cases decided by the Federal Communication Commission to conclude that phone numbers are public resources that cannot be owned by subscribers or carriers); In re StarNet, Inc., 355 F.3d 634, 637 (7th Cir. 2004) ("No one has a property interest in a phone number."); In re Best Re-Mfg. Co., 453 F.2d 848, 850 (9th Cir. 1971) (bankruptcy court does not have summary jurisdiction to decide dispute between debtor who wants phone number ported and creditor because telephone number is not property, according to applicable rules and regulations); Slenderella Sys. of Berkeley, Inc. v. Pac. Tel. & Tel. Co., 286 F.2d 488, 490 (2d Cir. 1961) (same)). These cases are based on the view expressed by relevant federal agencies, such as the Federal Communications Commission ("FCC"), that telephone numbers are a public resource that cannot be owned by carriers or subscribers. 47 C.F.R. § 52.107; see also In the Matter of Toll Free Serv. Access Codes, 20 F.C.C.R. 15089, 15090 (2005) ("Telephone numbers are a public resource and neither carriers nor subscribers "own" their telephone numbers."). Indeed, the FCC can reassign a vanity toll-free number if necessary. See generally, In the Matter

---

[4] The Fourth Circuit has not ruled on this particular issue.

of Toll Free Serv. Access Codes, 20 F.C.C.R. 15089; see also In the Matter of Toll Free Serv. Access Codes, 13 F.C.C.R. 9058 (1998) (noting the "well-established principle that toll free numbers are a public resource and cannot be owned by carriers or subscribers."). Thus, it seems that Virginia has not spoken directly on whether an individual or entity may have an ownership interest in a telephone number, and there is a split in federal authority.

Because there is a significant split of authority on this issue (and importantly, little guidance from the Virginia courts), it seems inappropriate to conclude that as a matter of law Plaintiff has no property interest in the toll-free telephone number. Accordingly, the Court **DENIES** Defendants' Motion to Dismiss Counts One and Two of the Complaint.

## C. Whether Violation of the VCCA Was Properly Pleaded

In the Complaint, Plaintiff alleges that Defendants' act of porting the toll-free telephone number violated the VCCA, entitling Plaintiff to civil damages. Defendants seek dismissal of Plaintiff's VCCA claims on two grounds: first, that Plaintiff has no property interest in a toll-free number, and the VCCA does not apply; second, that the Complaint does not allege all elements of a claim under Va. Code § 18.2-152.3.[5]

In Virginia, "[a]ny person whose property or person is injured by reason of a violation of any provision of this article . . . regardless of whether such act is committed with malicious intent may sue therefor [sic] and recover for any damages sustained and the costs of suit." Va. Code § 18.2-152.12A (2010). Recovery explicitly includes lost profits; and does not limit a Plaintiff from recovering any additional civil remedies otherwise allowed by law. Id.

The VCCA prohibits a broad range of activity, including computer fraud, which occurs when: "[a]ny person who uses a computer or computer network, without authority and: (1)

---

[5] The first of these grounds has been discussed at length in the previous section. Accordingly, this portion of the Order focuses on whether Plaintiff has properly alleged violation of the VCCA.

Obtains property or services by false pretenses; (2) Embezzles or commits larceny; or (3) Converts the property of another[.]" Va. Code § 18.2-152.3 (2010). For purposes of the VCCA, an individual "uses" a computer or a computer network "when he attempts to cause or causes a computer or computer network to perform or to stop performing computer operations." Va. Code § 18.2-152.2. Such use must be without authority. See Cvent, Inc. v. Eventbrite, Inc., 739 F. Supp. 2d 927, 934 (E.D. Va. 2010) (noting that the VCCA required proof that a defendant used a computer or network without authority and actually committed larceny, false pretenses, embezzlement, or conversion for liability). Under the VCCA, "[a] person is 'without authority' when he knows or reasonably should know that he has no right, agreement, or permission or acts in a manner knowingly exceeding such right, agreement, or permission." Va. Code § 18.2-152.2.

Here, Plaintiff has failed to allege a violation of the computer fraud provisions of the VCCA. Va. Code § 18.2-152.3. In the Complaint, Plaintiff alleges that Defendants used a computer to "wrongfully" port the toll-free number, in violation of Section 18.2-152.3 of the Virginia Code. Compl. ¶ 10, 23. However, Plaintiff does not allege that Defendants' computer use was without authority. See Compl. ¶¶ 9, 10, 11, 13, 19, 23. Defendants argue that Plaintiff is unable to make that allegation, as Defendants' agent was authorized to use Defendants' own computers and network, and Plaintiff does not allege that Defendants used a third party's computer or computer network. Doc. 13 at 6. In response, Plaintiff simply argues that Defendants' contentions rely on a "glib misreading" of the VCCA. Doc. 12 at 8.

Here, however, the court notes that Defendants correctly interpret "without authority" as modifying the phrase "any person who uses a computer or network." Va. Code § 18.2-152.3; see also Othentec Ltd. v. Phelan, 526 F.3d 135, 140 (4th Cir. 2008). Indeed, the Court's review of the VCCA's legislative history suggests that the focus of the law was on hackers. See HB 2471

13

Computer Crimes Act, VA B. Summ., 2005 H.B. 2471, Virginia Bill Summary, 2005 H.B. 247. These points are moot, however, as the Complaint does not allege that Defendants' use of computers was without authority, as required by the VCCA. Because Plaintiff has failed to allege an essential element of its claim, the claim must fail as a matter of law. Twombly, 127 S. Ct. at 1965. Thus, the Court **GRANTS** Defendants' Motion and **DISMISSES** Count Three of the Complaint **WITHOUT PREJUDICE.**[6]

### D. Whether Plaintiff Has Properly Pleaded a Claim for Constructive Fraud

"To prevail on a constructive fraud claim, a plaintiff must show by clear and convincing evidence that the defendant negligently or innocently made a false representation of material fact, and that the plaintiff suffered damage as a result of his reliance upon that misrepresentation. Supervalu, Inc. v. Johnson, 276 Va. 356, 367 (2008). A claim of fraud must involve "a misrepresentation of a present or pre-existing fact," accordingly, fraud cannot ordinarily "be predicated on unfulfilled promises or statements regarding future events." Id. The exception to this rule occurs when a defendant has made a promise that at the time it was made, the Defendants had no intention of performing. Id. at 368. In such cases, the promise itself is considered a misrepresentation of present fact and may be considered the basis for a claim of Actual Fraud. Id.; but see id. at 368 n.2 (indicating that evidence demonstrating a present intent **not** to fulfill a promise does not create a claim for constructive fraud). However, the Virginia Supreme Court is clear; "[u]nder no circumstances . . .will a promise of future action support a claim of constructive fraud." Id. This rule reflects the court's concern that the opposite would result in every breach of contract case giving rise to a constructive fraud claim. Id.

---

[6] Plaintiff is advised that any amended complaint must properly allege that Defendants' agent used a computer without authority. Plaintiff is further advised that the Amended Complaint must be filed with the Court within eleven (11) days of the issuance of this Order.

Here, the circumstances of the instant action present the precise concerns the Virginia Supreme Court addressed in Supervalu. Id. at 368. In short, the Plaintiff's claim fails because Plaintiff does not allege misrepresentation of a present or pre-existing fact. Plaintiff complains that Defendants' agent represented to Plaintiff, using various means, the following: (1) that Defendants would not transfer or affect any aspect of Plaintiff's phone services without first advising Plaintiff; and (2) when services were transferred there would be no interruption of service of the toll-free telephone number. Compl. ¶ 27. Indeed, the Complaint indicates that the transfer would not take place until several new lines were affixed to Plaintiff's business, an installation that would take several months from the moment when the parties entered their agreement. Compl. ¶¶ 8, 9. Thus, the alleged false representations made by Defendants were concerning the manner in which Plaintiff's service would be handled in the future. As such, Defendants' statements were promises for future action, and not misrepresentations of present or past fact, supporting a claim of constructive fraud. Supervalu, 276 Va. at 368.

Moreover, because Plaintiff alleges that Defendants' agent was "uninformed as to the truth or falsity of her representation," Plaintiff cannot allege that Defendants had no intent of performing, a fact that might give rise to a claim of actual fraud. Compl. ¶¶ 28, 29; Supervalu, 276 Va. at 368.

Because Plaintiff has not alleged a misrepresentation of a present or pre-existing fact, his claim of constructive fraud must fail as a matter of law. Accordingly, the Court **GRANTS** Defendants' Motion and **DISMISSES** Count Four of the Complaint **WITH PREJUDICE.**

## E. Whether Plaintiff has Properly Alleged a Claim of Negligence

### a. *Whether Plaintiff has Alleged Breach of a Duty Recognized in Virginia*

In Virginia, "[r]ecovery in tort is available only when there is a breach of a duty 'to take care for the *safety* of the person or property of another.'" Sensenbrenner v. Rust, Orling & Neale, Architects, Inc., 236 Va. 419, 425, 374 S.E.2d 55, 58 (1988) (emphasis in original); see also Blake Const. Co., Inc. v. Alley, 233 Va. 31, 34-35 (1987) ("There can be no actionable negligence where there is no breach of a duty 'to take care for the safety of the person or property of another.'"). As explained by the Virginia Supreme Court in Blake:

> [t]his principle derives from the nature of tort relief under a negligence theory: A duty to use ordinary care and skill . . . . results from a conclusion that an interest entitled to protection will be damaged if such care is not exercised. Traditionally, interests which have been deemed entitled to protection in negligence have been related to *safety* or freedom from physical harm. . . . However, where mere deterioration or loss of bargain is claimed, the concern is with a failure to meet some standard of *quality*. This standard of quality must be defined by reference to that which the parties have agreed upon.

Blake, 233 Va. at 34-35.

Thus, Virginia courts have generally held that tort law is not designed "to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement," finding that such compensation "remains the particular province of the law of contracts." Sensenbrenner, 236 Va. at 425 (quoting Kamlar Corp. v. Haley, 224 Va. 699, 706 (1983)). Virginia has acknowledged, however, that in certain circumstances a Plaintiff can show a breach of contract and a tortious breach of duty. In those circumstances, "the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract." Richmond Metro. Auth. v. McDevitt St. Bovis, Inc., 256 Va. 553, 558 (1998).

Defendants argue that Plaintiff has failed to allege breach of an extra-contractual common law duty. Doc. 10 at 11; Doc. 13 at 7, 8. In support of their argument, Defendants point to the Complaint, where Plaintiff simply alleges, "[t]he Defendants were negligent in their performance of certain acts incidental to the performance of a contract, and in certain matters preliminary to execution of the contract, and as a consequence, damages resulted." Compl. ¶ 32. In response, Plaintiff argues that the Complaint alleges "common law duties would become manifested in the event that certain proprietary rights were associated with a telephone number." Doc. 12 at 9. Plaintiff neither identifies these duties, nor the types of proprietary rights that would make such duties manifest.

Here, Plaintiff has failed to allege a duty sufficient to sustain a negligence cause of action. Plaintiff avers that Defendants' alleged negligence was "incidental to the performance of the contract," as well as matters preliminary to execution of the contract. As a result, Plaintiff's advertising investments were "devalued" and Plaintiff had "marked and measurable diminishment in business volume." Compl. ¶ 11. Because Plaintiff claims both the breach of contractual duty and the breach of a tortious duty, Plaintiff must allege breach of a common law duty. Richmond Metro. Auth., 256 Va. at 558. The Complaint identifies no such duty. Plaintiff's argument regarding this circumstances under which a common law duty will become manifest is inapposite, as Plaintiff is required to allege all elements of a negligence claim, including the duty allegedly breached, in the Complaint. Thus, because Plaintiff has not alleged a breach of an extra-contractual common law duty, the negligence claim fails as a matter of law.

b. *Whether The Negligence Claim is Barred by the Economic Loss Doctrine*

In a related argument, Defendants assert that Plaintiff's negligence and constructive fraud claims are barred by Virginia's economic loss doctrine. Doc. 10 at 11-12.[7]

"Virginia recognizes the economic loss doctrine, which stands for the proposition that if a plaintiff's injury is only [to that which] is the subject of a contract, any loss in value is a matter of 'disappointed economic expectation,' for which relief lies exclusively in contract, not tort." Levinson v. Massachusetts Mut. Life Ins. Co, 4:06 CV 086, 2006 WL 3337419 * 13 (E.D. Va. Nov. 9, 2006) (citing Gerald M. Moore & Son, Inc. v. Drewry, 251 Va. 277, 279 (1996)).

This doctrine relies on the exact same rationale as the requirement of an extra-contractual common law duty, the notion that "losses suffered as a result of the breach of a duty assumed only be agreement, rather than a duty imposed by law, remain the sole province of the law of contracts." Filak v. George, 267 Va. 612, 618 (2004). Thus, in Virginia, a tort claim ordinarily cannot be maintained in conjunction with a breach of contract claim. Levinson, 2006 WL 3337419 *13. The exception to this rule occurs when "the breach amounts to an independent, willful tort." Id. at *14 (quoting Kamlar, 224 Va. at 705).

Defendants argue that Plaintiff seeks to protect the expectations it bargained for in its contract with Defendants, the right to use the toll-free telephone number and profit from its use. Id. at 12. In response, Plaintiff argues that the complained of negligence is characterized as incidental and preliminary to performance and execution of a contract, and thus beyond the scope of the economic loss doctrine. Doc. 12 at 9.

It is undisputed that Plaintiff has brought tort claims in conjunction with a claim for breach of contract. See Compl. ¶¶ 14-33. Thus, the issue is whether Plaintiff has sufficiently alleged an injury and tort independent of the breach of contract. Levinson, 2006 WL 3337419

---

[7] Plaintiff's constructive fraud claims are otherwise disposed of, and thus, not addressed in this analysis.

*14. Plaintiff has alleged conversion, trespass to chattels, constructive fraud, violation of the VCCA, and negligence. See Compl. ¶¶ 14-33. While fraud is an independent, willful tort under Virginia law, Plaintiff's fraud based claims have been dismissed for failure to meet the pleading requirements. See Hewlette v. Hovis, 318 F. Supp. 2d 332, 337 (E.D. Va. 2004); see also supra Part III D. Plaintiff's conversion claim, is also an independent, willful tort, and may serve as a basis for a tort claim seeking compensation of economic losses. Hewlette, 318 F. Supp. 2d at 337. A claim of negligence, however, is not a willful tort, and thus cannot survive the application of the economic loss doctrine. Because Plaintiff has not alleged the breach of an extra-contractual common law duty, and because Plaintiff's claim is barred by the economic loss doctrine, Plaintiff's negligence claim must fail as a matter of law. Accordingly, the Court **GRANTS** Defendants' Motion and **DISMISSES** Count Five **WITHOUT PREJUDICE.**[8]

### F. The Propriety of an Award of Attorneys' Fees

Defendants argue that Plaintiff is not entitled to an award of Attorney's fees, because prevailing parties in breach of contract actions cannot recover attorneys' fees. Doc. 10 at 13; see also Nusbaum v. Berlin, 273 Va. 385, 400, 641 S.E.2d 494, 501 (2007). Plaintiff's Opposition does not attempt to rebut Defendants' arguments.

Here, Plaintiff has sought an award of attorneys' fees, presumably in association with Plaintiff's five tort claims, two of which have survived the instant Motion. Accordingly, an award of attorneys' fees remains appropriate.

---

[8] To state a negligence claim in the Amended Complaint, Plaintiff is advised that he must allege the breach of an extra-contractual common law duty as well as allege facts demonstrating that the alleged negligence was beyond the scope of the economic loss doctrine.

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants' Motion and **DISMISSES** Count Four of the Complaint **WITH PREJUDICE**. The Court also **DISMISSES** Counts Three and Five of the Complaint **WITHOUT PREJUDICE**. Finally, the Court **DENIES** Defendants' Motion as to Counts One and Two of the Complaint.

It is so **ORDERED**.

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge

HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
Date: May 13th, 2013